47 N.J. Super. 379 (1957)
136 A.2d 15
EUGENIA A. CARTER AND JOHN R. CARTER, PLAINTIFFS-RESPONDENTS,
v.
PUBLIC SERVICE COORDINATED TRANSPORT, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1957.
Decided November 8, 1957.
*381 Before Judges GOLDMANN, FREUND and CONFORD.
*382 Mr. Martin F. McKernan argued the cause for plaintiffs-respondents (Mr. Raymond J. Osborn, attorney; Mr. McKernan, of counsel).
Mr. Louis F. Stein, Jr., argued the cause for defendant-appellant (Mr. Stein, attorney and of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This appeal is from a judgment entered in favor of the plaintiffs, Eugenia A. Carter and her husband, John R. Carter, pursuant to a jury verdict in the Superior Court, Law Division. A motion for involuntary dismissal at the conclusion of the plaintiffs' case and a motion for a new trial were both denied.
Eugenia A. Carter, in the mid-afternoon of March 15, 1956, was waiting at a posted bus stop to board defendant's bus to take her to her doctor. She observed two buses approaching; one was riding along the curb line and the "other bus was passing it and cutting in front of it." The bus that was coming along the curb stopped before it approached the bus station. The other bus, after cutting in front of the bus at the curb, went past the posted sign and up to the corner where it stopped in a position diagonal to the curb. Mrs. Carter testified that when the bus came to a stop, the door of the bus was 20 to 24 inches from the rounded curb and the rear of the bus about three feet from the curb. The testimony is conflicting as to the exact distance between the bus and the curb. She walked toward the bus, said she saw the operator, and that he saw and looked at her. She said that as she attempted to step onto the bus from the curb, she had her left foot on the step but "the reach, stretch was too far for me and my foot came back from the step" and she fell. She said that her left foot slipped off the step, she lost her shoe, the upper portion of her body went forward into the bus, and she assumed a kneeling position so that just her feet were hanging out of the bus. When asked on direct examination, "Were you able to get up?" the plaintiff replied, "Eventually, I was, *383 because there wasn't anybody there to help me, and I had to get myself up."
Her testimony on direct examination proceeded as follows:
"Q. What did the bus driver say to you when he got out? He said `I knew you were pregnant.' He said that, `and I thought you were going to have trouble when you went (sic).'"
The defendant strenuously objected for the reason that what the witness said was narrative, and not part of the res gestae, and the driver of the bus was not a party to the action. However, the trial judge overruled the objection and permitted the answer as part of the res gestae. The bus driver testified that he saw Mrs. Carter walk toward the bus from where she had been standing near the posted bus sign, and denied he knew she was pregnant.
Both of the plaintiffs testified that her pregnancy was "large," and on the day of the incident she was wearing a loose-fitting winter coat with the lining removed. The same day, after the incident, a police officer was called to the plaintiffs' home to take her to a doctor, and he testified that her pregnancy "was an obvious fact." The baby, born on April 6, 1956, was normal and healthy, and no cause of action is predicated in its behalf.
A statement, signed by Mrs. Carter, was prepared by an investigator of the defendant on the day following the accident, and stated that the step of the bus was six to eight inches from the curb. In explanation of the contradiction with her testimony on direct examination, the plaintiff stated that when questioned by the investigator she was confined to her bed under sedation, and that the distance had been suggested by the investigator, although she admitted signing the statement. The investigator on cross-examination testified that Mrs. Carter had told him the step of the bus was eight to ten inches from the curb. A police officer, who was on duty at the crossing intersection, stated that when the incident occurred he had his back to the bus. He said when he observed "something wrong," he went to the bus and saw the plaintiff "leaning over in the bus." He testified *384 that the bus was stopped where the curb turns, only three inches from the curb, and that there was not room for her to stand between the bus and the curb. The bus driver testified that when the bus stopped the distance was "possibly 7 inches" between the side of the bus and the curb.
The defendant's investigator was asked on cross-examination if he discussed with Mrs. Carter at the time he secured the statement "whether or not she had felt her baby move since the accident." The defendant moved for a mistrial, which was denied.
A passenger in the same bus, testifying for the defense, was asked on cross-examination if she was being paid to testify. The defendant moved for a mistrial which was denied and the trial judge permitted the question to be reframed. It was answered in the negative.
The defendant appeals from the jury verdict of $2,000 for the plaintiff and $500 for her husband, per quod.
On the appeal, the defendant argues that the trial court erred in admitting into evidence testimony concerning the statement alleged to have been made by its driver concerning his knowledge or notice of the plaintiff's pregnant condition; the denial of its several motions for mistrial; the failure to grant a motion for involuntary dismissal at the conclusion of the plaintiffs' case, the charge of the court as it pertained particularly to the question of notice as to Mrs. Carter's pregnant condition, and excessive damages.
The important question on this appeal is the propriety of the ruling concerning the alleged statement of the bus driver that he knew the plaintiff was pregnant and she was going to have trouble when getting on the bus. The defendant argues that the alleged statement was narrative of a past event and, due to the lapse of time subsequent to the happening of the event, the declaration, if it was made, was not part of the res gestae.
The defendant contends that since the bus driver was not a party to the suit, his statement was not binding on the defendant and was also inadmissible as hearsay.
*385 The question raised upon the objection is thus seen to be twofold: (a) as a matter of agency, was the driver authorized to make the statement so as to bind his principal, the defendant; (b) if he was not so authorized, is the statement nevertheless admissible, as a matter of the law of evidence, as constituting part of the res gestae of the accident? We shall consider each of these aspects of the objection in the order stated.
It has been frequently held in this state that a statement by an employee or agent imputing fault to himself or to the defendant-employer is not admissible in a tort suit against the principal unless the words can be regarded as spoken in the execution of the employment or agency, notwithstanding that they relate to the business of the employer or principal. Blackman v. West Jersey & Seashore R.R. Co., 68 N.J.L. 1, 3 (Sup. Ct. 1902); Thompson v. Giant Tiger Corp., 118 N.J.L. 10, 15 (E. & A. 1937); Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145 (1951). Cf. Arenson v. Skouras Theatres Corp., 131 N.J.L. 303 (E. & A. 1944). It may well be considered, as a matter of original analysis, that the problem of admissibility here is not one of agency, since the liability of the principal is vicarious, proceeding upon the basis of respondeat superior. The direct inquiry is whether the driver was negligent. If he was, the defendant is liable because the driver was employed by it in driving the bus, entirely apart from any question of authority to make the disputed statement, a question which would correctly be deemed involved as a matter of agency if the defendant were being sought to be held contractually on the basis of a statement or conversation by the agent. Here the statement is material only as evidence of the driver's knowledge of the pregnancy of the plaintiff, because bearing upon his exercise of reasonable care in preparing for her boarding the bus. In such a situation, Rule 63(9) of the Uniform Rules of Evidence would render the statement admissible, since it related to a matter within the scope of the agent's duty and was made while the driver was still employed as agent. See also American Law Institute, Model Code of Evidence, Rule *386 508(a), comment (b). In support of the proposal see McCormick "Hearsay," 10 Rutgers L. Rev. 620, 625 (1956). See also the criticism of importing the res gestae concept, in dealing with the agency aspect of the problem, in 6 Wigmore on Evidence (3d ed. 1940), § 1766, p. 184 and 4 Ibid., § 1078, pp. 120, 121.
However, this court is controlled by the approach taken in decisions of our courts of last resort cited above. The question is, then, whether the statement can be said to have been made in the execution of the driver's agency. We think not. The statement was neither authorized directly nor necessary or pertinent in performing the driver's duty to assist the woman after the accident.
We consequently turn to the question as to whether the admission of the statement is supportable as part of the res gestae of the accident (independent of any relationship to the scope of agency to make such a statement).
The rule of res gestae has been frequently considered by our appellate courts. Vide, Robertson v. Hackensack Trust Co., 1 N.J. 304 (1949); Andriscak v. National Fireproofing Corp., 3 N.J. 466 (1950); Kelley v. Hicks, 9 N.J. Super. 266 (App. Div. 1950); Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952); Atamanik v. Real Estate Management, Inc., 21 N.J. Super. 357 (App. Div. 1952). The question to be determined is whether or not the statement made by the bus driver, as testified to by the plaintiff, "I knew you were pregnant * * * and I thought you were going to have trouble when you went," was so spontaneous and closely connected in point of time to the fall of the plaintiff that by its very quality and texture it tends to disclose the truth. Andriscak v. National Fireproofing Corp., supra. The time elapsing between the fall and the declaration by the bus driver is not necessarily a controlling factor. Each case must depend upon its own facts and circumstances. Ibid; 6 Wigmore, op. cit., supra, § 1750, p. 142 et seq.
The decision in Kelley v. Hicks, supra, although not characterizing the issue involved as res gestae, nevertheless is in point. There the defendant, a general partnership, *387 was being sued for the automobile death of the plaintiff's decedent. The plaintiff testified that at the scene of the accident and while he was down by his wife's body, one of the partners, actually involved in the incident, came over to him and said, "I am awfully sorry that I hit your wife. I was in a hurry down the pike to get hold of a stalled car." The court, in discussing the evidential use of the driver's statement of where he was going, stated the following (9 N.J. Super., at page 269):
"We infer from the record before us that the statement was made before there had been time to contrive and misrepresent (Slayback Van Order Co. v. Eiben, 115 N.J.L. 17, 22 (Sup. Ct. 1935)), and may be considered as `an undesigned incident of a litigated act, made spontaneously and without reflection.' Sharp v. Sears, Roebuck & Co., 123 N.J.L. 494, 496 (Sup. Ct. 1939). The attendant circumstances appear to support its trustworthiness and we have concluded that it may properly have affirmative testimonial value within the holdings in Slayback Van Order Co. v. Eiben, supra; Sharp v. Sears, Roebuck & Co., supra; Demeter v. Rosenberg, 114 N.J.L. 55, 57 (Sup. Ct. 1934); Murphy v. Brown & Co., 91 N.J.L. 412, 416 (Sup. Ct. 1918). Cf. Wigmore, Evidence (3d ed. 1940) § 1750."
Our examination of the cited authorities discloses that in each instance the court was concerned with the evidential use of spontaneous statements, which are generally characterized as within the rule of res gestae. Cf. 6 Wigmore, op. cit., supra, § 1750, p. 442; McCormick, op. cit., supra, § 272, p. 578 (1954).
It is our opinion that the facts here are no less persuasive than those recited in the Kelley case, supra. When the plaintiff fell, the bus driver stated that he expected her to get up and when she did not arise immediately, he set his hand brake, got out of his seat and went to the door well to assist her. She testified that he then made the objected to statement. While the statement was not made precisely at the same instant as the occurrence, it was made contemporaneously therewith and was sufficiently close to the happening as to illustrate its character. With these factors, we can only conceive that this event provoked sufficient apprehension *388 on the part of the one who may have felt responsible so that the declaration had an element of spontaneity which precluded any tinge of artificiality. Cf. Andriscak v. National Fireproofing Corp., supra, 3 N.J. at page 469; Riley v. Weigand, supra, 18 N.J. Super. at page 77. The reaction of the trial judge to the precise factual setting in which the rule of law operates should be accorded some weight. The statement of the driver was properly admitted, as proof of the fact of his knowledge of the plaintiff's pregnancy and of the fact that she would have difficulty in boarding the bus.
Having decided that the driver's statement was properly allowed, thereby providing evidence of notice of Mrs. Carter's condition, it becomes necessary for us to determine whether the trial judge properly denied defendant's motion for an involuntary dismissal. In addition to the evidence of notice, we have testimony of the plaintiff, her husband, and the policeman who visited the plaintiff on the day following the incident, that her pregnant condition was markedly noticeable. With this factual setting, the question for the jury was whether in the light of knowledge of the pregnancy, the driver brought his bus to the curb at a point and under circumstances which were calculated to provide a reasonably safe means for the plaintiff to ascend the steps of the bus. In Meelhein v. Public Service Co-ordinated Transport, 121 N.J.L. 163 (E. & A. 1938), the evidence disclosed plaintiff's pregnancy at the time of the accident, but the court found there was no evidence of knowledge of the plaintiff's pregnancy by the defendant's bus driver. A nonsuit was granted for failure to establish a prima facie case. Inferentially, the decision would probably have been reversed had there been a showing of actual or constructive notice of plaintiff's condition on the part of the defendant's bus driver.
Where the defendant through its employee has notice of the physical infirmity of one who is about to board its vehicle, it owes her a duty and is chargeable with a greater degree of attention than where a person is under no physical *389 disability. Herbich v. North Jersey St. Ry. Co., 67 N.J.L. 574 (E. & A. 1902); 10 Am. Jur., Carriers, § 1273 et seq., p. 184 (1957 Cumulative Supp., p. 14); 38 Am. Jur., Negligence, §§ 37, 38, pp. 683, 684; 13 C.J.S., Carriers, § 694, p. 1289 et seq. Cf. Annotations, 55 A.L.R. 389 (1928); 124 A.L.R. 1428 (1940). While the bus driver in testifying denied making the statement that he knew something was going to happen because he knew she was pregnant, his denial is unrealistic in view of the testimony. Can it be said that from common experience a bus driver trained in making observations would not notice that a prospective passenger, "large" in her ninth month of pregnancy was obviously pregnant. He said that he saw Mrs. Carter standing in the vicinity of the bus sign, and then saw her cut across from where she was standing to the place where the bus stopped. Thus presented, the question became one for a jury.
The defendant urges error in denying its motions for mistrial on the grounds hereinafter set forth. The denial of such a motion is within the sound discretion of the trial court and is not reversible unless there is a clear showing of mistaken use of discretion. Schuttler v. Reinhardt, 17 N.J. Super. 480 (App. Div. 1952); Budden v. Goldstein, 43 N.J. Super. 340 (App. Div. 1957). Objection was made to a question propounded to the defendant's investigator on cross-examination, asking him if he discussed with Mrs. Carter whether or not she had felt her "baby moving" since the accident (which occurred the day before). The objection was sustained, followed by a side-bar discussion, and when the matter was resumed in the presence of the jury, the court again stated the objection was sustained. It is noted that the plaintiff, as the first witness, testified that the baby was born normally. Further, no claim was made for any injuries to the baby. With these facts, we cannot discern any error in denying defendant's motion or find that its denial affected the defendant's substantial rights.
The other basis for defendant's motion for mistrial was a question propounded, upon cross-examination, to *390 a defense witness when she was asked if the defendant was paying her to testify. Immediately, the question was stricken without an objection being made. The question could have created an unfavorable inference, but whatever prejudice may have resulted was eliminated by the trial judge's timely instruction to the jury, when he carefully explained that the question would not be permitted. Budden v. Goldstein, supra. When the question was rephrased, asking substantially the same question, the witness answered in the negative, without any objection. The effect was to temper the previous question. We regard it as being improper for the trial judge to explain to the jury that it was not objectionable to compensate a subpoenaed witness, who is not an expert witness, for mere inconvenience as distinguished from lost wages, etc. It is the civic duty of a witness who is subpoenaed to testify to aid the court in the determination of the truth in the administration of justice. But there was no reversible error here.
Lastly, the defendant urges that the verdict was excessive, against the weight of the evidence, and the result of mistake, passion, prejudice or partiality. The testimony revealed that the plaintiff's physical injuries consisted of a fracture of the terminal phalanx of the left great toe involving the basal articulate and lateral aspect, sprain of the left ankle, and minimal contusion of the left shoulder, abrasion of the right leg from the knee to the ankle, associated pain and lack of movement in the left foot. She was also entitled to damages for the emotional upset caused by her anxiety over the possible injuries to the unborn child. Buchanan v. West Jersey R.R. Co., 52 N.J.L. 265 (Sup. Ct. 1890); Shay v. Camden & Suburban Ry. Co., 66 N.J.L. 334 (E. & A. 1901); 2 Harper and James, Law of Torts, § 18.4, p. 1032 (1956); Annotation, 145 A.L.R. 1104, 1109 (1943). The jury allowed her $2,000 and the plaintiff husband $500. The verdict was not so excessive as to warrant a reversal.
We have considered the other objections as to the charge and refusal to charge as requested. To some extent, these *391 objections have already been answered. We find them all without merit.
Affirmed.