107 N.J. Super. 394 (1969)
258 A.2d 713
NOBERO CO., PLAINTIFF-RESPONDENT,
v.
FERRO TRUCKING INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1969.
Decided November 18, 1969.
*396 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Ralph G. Mesce argued the cause for appellant.
Mr. Richard J. Sauerwein argued the cause for respondent (Mr. John D. Leslie, Jr., attorney).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Plaintiff landlord sued defendant tenant for damage to the tenanted building in Hillside, New Jersey, which resulted from a fire allegedly caused by defendant's negligence. The case was tried before a jury. After 12 minutes of deliberation it returned a unanimous verdict in favor of plaintiff for $17,000, the stipulated amount of the damage. Defendant timely appealed the judgment based upon the verdict.
Reversal is sought on two grounds. First, defendant contends that the trial court erred when it allowed into evidence, over objection, testimony by Fire Captain Mateer of the Hillside Fire Department that, in his investigation of the fire, he was told sometime after the fire by one of two employees of defendant, who were in the building when and where the fire occurred, that the fire was caused, in essence, by the use of gasoline, which the fire captain concluded was a "careless use of gasoline." The fire captain was unable to identify which one of the two employees made this statement to him.
The second claim of reversible error is that the trial court abused its discretion in allowing plaintiff's attorney to lead unduly plaintiff's witness, Fire Captain Mateer, in the critical area adverted to above, over defendant's repeated objections thereto.
*397 The record discloses the following facts. During the early afternoon of July 12, 1966 a fire broke out at the premises owned by plaintiff and leased to defendant for the garaging and maintenance of its trucks. Vincent Naddeo, a foreman or maintenance supervisor in the employ of defendant for 15 years, and Walter Marcin, a mechanic in the employ of defendant for nine years, were the only two persons in the garage occupied by defendant immediately prior to and at the time the fire began. There was "just one" vehicle in the garage, "a tractor." There was no trailer attached to it. Defendant owned the tractor.
The tractor had been in the garage three to four weeks. It was there for a complete overhaul  "transmission, rear, tires, brakes." Marcin testified, "Everything was completed outside of the tail light. All we had to do was take it outside and adjust the governor on it." That would have been the next job. The vehicle had been painted inside the garage; it had remained within the building during the three or more weeks of the complete overhaul.
At the time of the fire Marcin was replacing the tail light; he had started to take off the old tail light. It was to be replaced by a new assembly, which was on the floor "right alongside of" Marcin. He had only started "to twist one bolt" when he saw the fire. Naddeo was on the right side of the truck. Marcin could see only his feet. Marcin testified that he was in the back of the tractor, in a "squatted" position, when he saw "a big ball of flame" coming, moving across the floor toward them, from the left front of the building, "as you look at the front from inside the building back toward the left front of the truck." Marcin described the floor as "clean as a whistle" and the ball of fire as being "about two feet." He yelled to Naddeo, "Fire on the deck," jumped up, and he and Naddeo ran for the fire extinguisher to try to put it out. Not succeeding, both men ran and called the fire department. Marcin called from "next door" and Naddeo phoned from the "back room" of the garage.
*398 Neddeo testified that immediately prior to the fire he was "in the process of removing what is called a pressure sensitive stencil, this is self-adhesive." He was half-way through the removal of that on the right door when the fire took place. He denied telling Captain Mateer that he had washed the truck down with gasoline. He explained, "In the trade you don't use solvent, and gasoline is a solvent, to remove over-spray or anything from a vehicle, you can't even use soap and water, not only gasoline." This is so, said Naddeo, "because it will dull the finish or probably lift it from the metal which it has been sprayed onto."
Marcin stated in his testimony that he "believed" there was one five-gallon can of gasoline, which was kept toward the front of the building "by the door." He "believed" that it was in the building on the day of the fire. The can had a "screw top." Marcin testified that he knew the top was screwed on. The gasoline was used primarily for emergency calls "when a truck breaks down and runs out of gas." It was also used "sometimes" for washing parts. Marcin testified that neither he nor Naddeo had washed any parts that day in gasoline. While admitting that he smoked cigarettes, Marcin swore that he was not smoking at the time when he was working behind the truck. The tractor itself had a gasoline tank on it.
The foregoing summary of the testimony of Marcin and Naddeo, the only two occupants of the garage when the fire began, leaves unanswered the question, "Who started or what was the cause of the fire?" Their actions, immediately before the ball of flame was first seen  Marcin's removing a tail light assembly preparatory to its replacement with a new one and Naddeo's work effort at the right door in removing a pressure sensitive stencil, self-adhesive  do not establish a causal relationship to the fire. Yet, the fire did occur and these employees of defendant were the only two persons in the building at the time.
There was only one other witness, namely, Fire Captain Mateer. The testimony of this witness, objected to by defendant *399 in certain critical areas hereinafter discussed and admitted over objection, was crucial to a finding of liability. We shall first summarize it and then discuss the propriety of its admission by the trial court.
Captain Mateer testified that he was in the firehouse about a block or two away from the scene of the fire, on the same street but on the opposite side thereof, when, at about 2:28 P.M., a pedestrian entered the firehouse and informed him that "there was a truck on fire down the street," pointing eastward. Assuming it was a fire in the street, he left the firehouse on an engine pumper, along with the driver and one other fireman on the rear step. Usually a full crew consists of five, but the vacation time and a man out sick left the captain undermanned, with only two fire fighters besides himself.
As the fire-fighting trio pulled from the set-back firehouse into the street, the captain could see down the street to Ferro's garage and observed the cinder block building fully involved in fire. He could see smoke and flames coming from the building. As he approached he observed Naddeo coming out of the building in the smoke and fire, falling, "actually being blown out of the building." Naddeo fell into the street, picked himself up and "ran toward my engine." Mateer went to Naddeo immediately. He asked Naddeo "if there was anyone else in the building." Naddeo answered, "No." In his report of fire the fire captain noted also, "He [Naddeo] told me everyone was out but there was a tractor and a lot of gasoline in the building." (Emphasis added).
Captain Mateer did not ask Naddeo anything else at this point. His sole concern, he said, was to extinguish the fire, to save life and property. It took approximately a half-hour to extinguish the fire. But the captain was at the scene "for three hours." He stated that he talked "to all employees in the company" during that time. The captain testified that there were three employees there during the three hours  Marcin, Naddeo and "a third kid," described by him as "a thin boy, tall thin kid." The third person was never further *400 identified and did not appear as a witness at trial. The captain's reference to this boy is directly at variance with the testimony of Marcin and Naddeo that they were the only two persons in the building when the fire started.
The captain testified that he spoke to Naddeo "about his condition, he was burned. I told him to get a doctor, I was a little bit concerned." Naddeo did not feel that this was immediately necessary. Mateer was positive that he spoke to both Marcin and Naddeo but, except in the particulars hereinabove mentioned, he did not specify when, during his three hours' presence the critical conversation hereinafter adverted to took place.
Captain Mateer was then asked if Marcin or Naddeo had told him what occurred. He knew that "one of them" had told him, but he could not recall "which of the two" it was. Defendant's attorney thereupon objected to the captain's further testifying as to the conversation, since he was unable to identify the particular employee who made the statement. Defendant's objection was argued outside the presence of the jury. Plaintiff's attorney was permitted to place on the record his proffer of proof. The trial court overruled the objection, ruling that
* * * any admission testified to by either employee concerning this fire and their work at that particular time is admissible and is authorized and within the scope of their employment so, to speak. There is no question in my mind concerning admissibility; the question is whether or not you are being disadvantaged by the failure of the plaintiff to identify the person alleged to have made the admission. [Emphasis added]
The trial judge found no disadvantage, in that there were only two employees involved and defendant had the power to produce them and ask them whether they made the statement to which the captain was about to testify.
Upon the return of the jury the question was posed again by plaintiff's attorney to Mateer as to what "either of these gentlemen had said when inquiry was made as *401 to what had occurred or what happened." Mateer testified "one" of them said:
They had stenciled the name of the trucking firm on the door of the truck and there was an over-spray of paint on another section of the truck and they were washing it off with gasoline * * * there was a flash of fire and the fire developed.
The next day the captain made up his customary report and set forth therein as the cause of the fire: "Careless use of gasoline." He interpreted this to mean "to use gasoline for any purpose other than to run a cumbustible engine." The report gave no details and recited no reason for the conclusion, "Careless use of gasoline." Nor did the report contain the statement allegedly made by "one" of the two "employees that they were using gasoline" to wipe down over-spray.
After Captain Mateer had testified, Marcin was recalled. He admitted having had a conversation with the captain on July 12, 1966, but he stated that he did not tell the captain he had washed the truck down with gasoline, or any part of the truck. He explained that there was a new paint job on the truck and "if we used gasoline on that paint it would take the gloss right off it." The truck had been wiped down "with dry rags." This testimony coincided with that of Naddeo, noted above, in its denial that Captain Mateer had been told that the truck had been washed down with gasoline and in its explanation why gasoline would not be used on a newly painted truck.

I
The trial judge admitted the statement to the fire captain on the ground that it was an "admission" by an agent (someone of the only two) and was, therefore, admissible against defendant principal. He noted that allowing this evidence did not disadvantage defendant because it could, as it did, call both of the two employees to deny making the statement. *402 Additionally, both testified as to why gasoline would not have been used for the stated purpose.
The general rule in this State has been that, absent a "res gestae" declaration, "The admissions of an agent bind a principal only when within the scope of the agency or when they are authorized by the principal." Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145 (1951). No claim is made that the statement made to the fire captain, sometime within the three hours while he was at the scene, was a spontaneous utterance to justify its admissibility under the "res gestae" exception. In Hansen statements made by defendant's superintendent and by its personnel manager after the accident were held to be inadmissible because they were "not shown to have been authorized or made during the performance of the duties of their employment; that they relate to the employer's business is not enough." If Hansen still governed, a similar result would be mandated here, because there was no proof that Marcin, a mechanic, or Naddeo, a maintenance supervisor, had been authorized, expressly or impliedly, to make any admission against their employer's interest. Nor did either make the alleged statement "during the performance of their duties."
In Cafone v. Spiniello Construction Co., 42 N.J. Super. 590, 604-606 (App. Div. 1956), we acknowledged the rule laid down in Hansen but noted that it was not necessary to prove that the agent had "express" authority to make the admission. We ruled that statements made by an agent are admissible in evidence against the principal, stating: "If they are ordinary incidents of the position occupied by the agent, authority ought to be implied." (At 605). In that case statements made by the president and part owner of defendant to the police, who were conducting an investigation into an accident in the course of the company's operation, were held to have been made within the apparent ambit of his agency and, therefore, admissible.
In Carter v. Public Service Coord. Transport, 47 N.J. Super. 379 (App. Div. 1957), we deemed inadmissible as *403 an admission against defendant bus company a statement by a bus driver. We relied upon the rule laid down in Hansen v. Eagle-Picher Lead Co., supra. The statement related to the bus driver's knowledge of plaintiff's pregnancy, because of its bearing upon his exercise of reasonable care in preparing for her boarding the bus. But we noted (at 385) that "Rule 63(9) of the Uniform Rules of Evidence would render the statement admissible, since it related to a matter within the scope of the agent's duty and was made while the driver was still employed as agent." Rule 63(9) had not yet been adopted in New Jersey in 1957, when the Carter case was decided. For that reason, we felt compelled to follow the exclusion required by such cases as Hansen, supra.
Since then we have adopted, as part of our new rules of evidence, R. 63(9). These new rules were put in force on September 11, 1967. The trial of the instant case took place on October 28, 1968, thereby making the new rules of evidence applicable. R. 63(9) (a) represents a departure from New Jersey law as represented by Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145-146 (1951), and Carter v. Public Service Coord. Transport, 47 N.J. Super. 379 (App. Div. 1957). See Comment on R. 63(9) (a) in Report of the New Jersey Supreme Court Committee on Evidence (March 1963), at 165. The comment points out that the old rule excluding the admission by the agent had been severely criticized by outstanding scholars and in recent cases, citing Martin v. Savage Truck Line, 121 F. Supp. 417 (D.D.C. 1954), and Grayson v. Williams, 256 F.2d 61 (10 Cir. 1958). R. 63 (9) (a) adds as a safeguard to protect against vengeful or vindictive accusations that the statement be made while the employment relationship continues. That safeguard was present in the instant case.
We view R. 63(9) (a) as sanctioning the admissibility of admissions made by agents when they are made before termination of the employer-employee relationship and when they relate to matters within the performance duties of the agent. The new rule is based upon the necessity of *404 arriving at the truth, common sense and public policy. "To continue the old restriction would be to immunize all principals from statements made by their working agents and employees who transact their business and who get into the accidents." See Comment on R. 63(9)(a), referred to above. The rule tends to guarantee the trustworthiness and reliability of the vicarious admissions.
We conclude that the trial court ruled correctly in admitting the statement made by an agent of defendant to the fire captain in the course of his investigation, with reference to the employees' having washed off the over-spray of paint with gasoline, immediately before the fire. It matters not which one of the employees made the admission. Both denied it. Credibility was for the jury.

II
Defendant next contends that plaintiff's witness, Captain Mateer, was unduly led by questions addressed to him and permitted to answer leading questions, over allegedly repeated objections by defense counsel.
However, we would not regard the challenged leading as a basis for reversal herein. True, there was some leading, but it became necessary because of the captain's reference to the presence of three employees during his three hours at the scene, when there were only two employees of defendant in the premises at the time of the fire. While leading questions are generally not permitted on the direct examination of one's own witness, there is an area of permissible leading, within the discretion of the trial judge, to avoid confusion, to clarify testimony, or otherwise to bring out the truth in serving the cause of justice. Williams v. Guerreri, 136 N.J.L. 60, 61 (Sup. Ct. 1947). We do not find herein any abuse or mistaken exercise of discretion by the trial judge as to this aspect of the case. Nor, as plaintiff points out in its brief, did defendant's attorney make the claimed "repeated objections" on the ground that the questions were "leading." Objections were based on other grounds, *405 such as lack of identity of the particular employee who made the alleged statement to the fire captain. See Shutka v. Pennsylvania R.R. Co., 74 N.J. Super. 381, 404 (App. Div. 1962). An objection to testimony should be accompanied by the grounds therefor. R.R. 4:47 (now R. 1:7-2).

III
We note that defendant has made no claim that the verdict was against the weight of the evidence. Perhaps this was due to the fact that no motion for a new trial was made.
The judgment is affirmed.