259 N.J. Super. 532 (1992)
614 A.2d 639
MICHELLE PIETRUSKA, PLAINTIFF,
v.
CRAIGMEUR SKI AREA, ET AL., DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
March 20, 1992.
*533 Dominick Zero for plaintiff (Krivitzky, Springer & Feldman, attorneys).
Samuel J. McNulty for defendant (Samuel A. DeGonge, attorney).
*534 ARIEL A. RODRIGUEZ, J.S.C.
The issue presented in this pretrial motion to dismiss the complaint is whether a person who is injured as a result of the negligent operation of a ski lift is required to comply with the notice provisions of N.J.S.A. 5:13-7. There are no reported opinions on this subject. For the reasons that follow this court holds that the notice requirements do not apply in such a case.
The matter comes before the court on the a motion of defendant Craigmeur Ski Area (Craigmeur) for an order dismissing the plaintiff's complaint for failure to comply with the notice provisions as set forth in N.J.S.A. 5:13-7. Plaintiff has filed a cross-motion for an order directing Craigmeur to produce its file on this matter and compelling the deposition of its general manager.
The plaintiff Michelle Pietruska contends that on February 11, 1990 she was a patron at the ski area operated by Craigmeur. She rented skis and boots and purchased a lift ticket. After skiing for approximately six hours she had an accident. Throughout that day, and each time she rode the chairlift to the top of the mountain, she noticed that there was always an operator inside the booths at the bottom and the top of the lift. On what was to be her final run of the day, and while boarding the chairlift, one of her skis fell off and landed on the ground. She began to scream to the bottom operator to stop the lift so she could get off to secure her ski. The operator failed to stop the lift. She traveled the entire length of the mountain with one ski. Upon approaching the drop-off point at the top, she began to scream to the top operator to shut down the lift so she could safely dismount. Despite her screams no one stopped the lift. Plaintiff observed that the operator at the drop-off point was not in the booth. He was at some distance shoveling snow, leaving his post unmanned. Plaintiff slipped and caught her arm in the metal bars of the chairlift. She was dragged eight to ten feet before the operator shut down the lift. The operator asked her if she needed assistance and advised her to report to *535 the main office. She reported to the main office and was then directed to the Ski Patrol. At the Ski Patrol office, she made a written report of the incident. She provided the Ski Patrol with her name, address, location of accident and how it occurred, name of eyewitness, and brief description of her injuries and physical complaints. Plaintiff contends that as a result of her being dragged by the chairlift she sustained bodily injuries. Thereafter Pietruska filed the complaint alleging inter alia that Craigmeur was negligent in its operation of the ski lift. Plaintiff further alleges that four days after the accident her attorneys mailed to Craigmeur a "notice of claim" letter. She also contends that on February 22, 1990 her counsel spoke on the telephone regarding her claim with Raymond Schank, Vice-president and General Manager of Craigmeur. Furthermore she asserts that a second "notice of claim" letter was mailed to Craigmeur on July 16, 1990.
Craigmeur contends that it did not receive any notice or phone calls from the plaintiff until it received the July 16, 1990 letter. Counsel for Craigmeur argues that that letter did not provide any information regarding the accident other than the claimant's name and date of occurrence. Craigmeur also alleges: that it has no record of a written report by the plaintiff to the Ski Patrol; and that it mailed a letter to the plaintiff on December 26, 1990 requesting information concerning the accident. Pietruska maintains that she has never received Craigmeurs' letter.
Craigmeur moves for a dismissal of the complaint for failure to comply with N.J.S.A. 5:13-7. That statute reads as follows:
Report of injury; precondition to suit; limitation time.
As a precondition to bringing any suit in connection with a skiing injury against an operator, a skier shall report in writing to the ski area operator all the details of any accident as soon as possible, but in no event longer than 90 days from the time of the incident giving rise to the suit. The report shall include at least the following: name, address, brief description of incident, location, alleged cause, others involved and witnesses, if any. If it is not practicable to give the report because of severe physical disability resulting from a skiing *536 accident or incident, the report shall be given as soon as practicable. This section is not applicable with respect to a ski area unless the operator conspicuously posts notice to skiers of the requirements of the section.
Pietruska argues that since this accident occurred as a result of negligent operation of a chairlift, her claim falls within an exception to the statute, to wit: N.J.S.A. 5:13-3(e) which provides that:
Nothing contained in this act shall be construed as limiting or otherwise affecting the liability and responsibilities of a ski area operator under the "Ski Lift Safety Act" (P.L. 1975, c. 226, C. 34:4A-1 et seq.), or shall prevent the maintenance of an action against a ski area operator for negligent construction, maintenance or operation of a passenger tramway.
Passenger tramway is defined at N.J.S.A. 34:4A-3(a) as follows:

"passenger tramway" means a device used to transport passengers uphill, on skis or in cars on tracks or suspended in the air, by the use of steel cables, chains or belts or by ropes, and usually supported by trestles or towers with one or more spans, and includes ... (4) "chairlift" means a type of transportation on which passengers are carried on chairs suspended in the air and attached to a moving cable, chain, or link belt supported by trestles or towers with one or more spans, or similar devices.
The court agrees with the plaintiff and concludes that any claim alleging the negligent maintenance, construction or operation of a chairlift, removes that cause of action from the reach of N.J.S.A. 5:13-1 to 11. In determining the proper interpretation of a statute, the basic rule is that statutory language should be given its ordinary meaning absent specific intent to the contrary. Mortimer v. Bd. of Review, 99 N.J. 393, 493 A.2d 1 (1985). In construing a statute a court must consider not only the particular statute in question, but the entire legislative scheme of which it is a part. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 527 A.2d 1368 (1987). In the present case the statutory language is clear and unambiguous. Moreover the result reached here is consistent with the legislative scheme set by the interplay of N.J.S.A. 5:13-1 to 11 and the Ski Lift Safety Act (Lift Act), N.J.S.A. 34:4A-1 to 15.
The Lift Act became effective on October 15, 1975. That statute regulates the construction, maintenance and operation of ski lifts and public tramway by the Commissioner of the *537 Department of Labor. It also defines the responsibilities and liabilities of ski area operators with respect to the mechanical devices which are customarily used in the sport. On the other hand N.J.S.A. 5:13-1 to -11 became effective on February 22, 1979. It seeks to codify the duties of ski area operators to minimize certain specified risks which can be controlled and to preclude the creation of a duty over those risks which it cannot reasonably or practically be expected to control. Moreover the statute also codifies the duties of skiers, who are deemed to have knowledge of their ability and the inherent risks of skiing. See Jeffrey W. Lorell, New Ski Law: Are down hill injury claims headed downhill? 103 N.J.L.J. 197 (1979). Specifically, N.J.S.A. 5:13-1(b) states:
The purpose of this law is to make explicit a policy of this State which clearly defines the responsibility of ski area operators and skiers, recognizing that the sport of skiing and other ski area activities involve risks which must be born by those who engage in such activities, and which are essentially impractical or impossible for the ski area operator to eliminate. It is, therefore, the purpose of this act to state those risks which the skier voluntarily assumes for which there can be no recovery.
The act was prompted by the Vermont Supreme Court's affirmance of a jury verdict against a ski area operator. Sunday v. Stratton, 136 Vt. 293, 390 A.2d 398 (1978); see Statement, Judiciary Law, Public Safety and Defense Committee following N.J.S.A. 5:13-1. The Sunday decision affirmed the first significant jury verdict against the operators of a ski area arising from a "downhill" injury (i.e. occurring on the ski slope; rather than an "uphill" injury arising in connection with the use of a ski lift) Lorell, supra at 197. It is obvious that New Jersey's legislative response to the Sunday decision was to identify and enumerate the inherent risks of skiing. Implicitly a ski area operator owes no duty with respect to these inherent risks. Improper operation of a ski lift is not an inherent risk of skiing since, with due care, it can be eliminated. While that statute imposes certain duties on a skier who uses a lift, it does not identify proper usage thereof as an inherent risk. It is precisely for that reason that the reference to the Lift Act was placed *538 under the section which deals with the responsibility of operators (N.J.S.A. 5:13-3). It is reasonable to conclude that the drafters of the statute wished to clarify that operators still owed a duty to the general public under the Lift Act. The public policy set forth in the Lift Act has not been changed by the later statute. That policy is set forth at N.J.S.A. 34:4A-2.
It shall be the policy of the State of New Jersey to protect its citizens and visitors from unnecessary mechanical hazard in the operation of ski tows, lifts and tramway, to ensure ... that accepted safety devices and sufficient personnel are provided for . .. the safe operation of ski tows, ski lifts and tramway ...
The plaintiff's claim is governed by the Lift Act. Since there is no precondition of a 90 day notice in that statute, there is no basis for Creaigmeur's motion to dismiss. Accordingly, the motion to dismiss the complaint is hereby denied. The cross-motion to compel production of Creaigmeur's file and the taking of the deposition of Raymond Schank is rendered moot and therefore is denied without prejudice.