266 N.J. Super. 87 (1993)
628 A.2d 801
KAREN REISMAN AND KAREN REISMAN AS GUARDIAN AD LITEM FOR THE INFANT PLAINTIFF, MICHAEL REISMAN, PLAINTIFFS-RESPONDENTS,
v.
GREAT AMERICAN RECREATION, INC. (IMPROPERLY PLEADED AS VERNON VALLEY SKI AREA, INC.), DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 18, 1993.
Decided July 9, 1993.
*89 Samuel A. DeGonge, attorney for appellant (Samuel J. McNulty, of counsel and on the brief).
Andrew H. Rossmer, attorney for respondents.
Before Judges MICHELS, BILDER and BAIME.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Great American Recreation, Inc. (improperly pleaded as Vernon Valley Ski Area, Inc.) appeals from a judgment of the Law Division which was entered on a molded jury verdict that awarded plaintiff Michael Reisman damages in the total amount of $9,795.00 in this personal injury negligence action.
The events which gave rise to this action took place at defendant's Vernon Valley Ski Resort. Plaintiff, who was admittedly a novice skier, was skiing alone on a beginner's slope. He was proceeding slowly and cautiously down the trail in a tight serpentine or "S turn" pattern when another skier crashed into him. As a result of this collision, plaintiff was knocked to the ground and seriously injured. The fact of plaintiff's injury and the fact that it resulted from a collision with another skier were not, and are not, seriously disputed. Instead, the pivotal issue, both at trial and on appeal, revolves around the nature of the duty, if any, that defendant owed to plaintiff concerning the elimination of the risk *90 which resulted in his injuries; namely a drunken and dangerous skier on its slopes.
The existence of such a duty on defendant's part relies primarily upon defendant's awareness of the danger that this skier presented. Regarding this issue, various statements of defendant's employees were critical to plaintiff's case. Specifically, the lift operator at the bottom of the slope on which plaintiff was injured and several ski patrollers, which plaintiff encountered in the resort's infirmary, rendered statements to plaintiff, or in his presence, which clearly demonstrated that defendant was aware of the danger presented by this skier. Particularly, these individuals revealed to plaintiff that the skier who had collided with him was named "Mike"; that "Mike" was an employee of defendant; that "Mike" was drunk, and that "Mike" had previously had his lift ticket taken away and had been asked to leave the slopes for skiing drunk.
Plaintiff clearly recognized these individuals as employees of defendant due to the unique outerwear in which they were clad. He testified that the lift operator's jacket was at least partially responsible for his identification of that person as an employee of defendant, although he was unable to remember any particular details about that jacket. However, plaintiff recalled vividly the details of the ski patrollers' jackets. He noted that they said "Ski Patrol" on them, and that they also had a red cross on the back. Defendant's own witness, Elizabeth Ann Masters, the Resort's Operations Manager, corroborated plaintiff's story in this regard by offering a description of the ski patrollers' and lift operators' uniforms which was entirely consistent with the one given by plaintiff. Specifically, she testified that defendant's ski patrollers wear blue jackets which say "National Ski Patrol" and have a red cross on the back, and defendant's lift operators wear dark navy windbreakers over their ski clothing that say "The Great Gorge Resort Staff" on the back in white letters.
This action was instituted on plaintiff's behalf to recover damages for the injury that he had sustained on the theory that *91 defendant had breached its duty to make its ski area reasonably safe for customers such as himself. In attempting to establish this breach of duty, plaintiff sought to rely heavily on the aforementioned statements of defendant's employees concerning "Mike," the skier that had collided with him. Specifically, he sought to use these statements to establish "Mike's" drunkenness and dangerousness, as well as defendant's awareness of these factors. Defendant objected to the admission of these statements on hearsay grounds. Following a Rule 8 hearing, the trial court concluded that although the statements constituted hearsay, they fit within the exception for vicarious admissions contained in Evid. R. 63(9)(a), and thus, would be admitted into evidence. The trial court indicated further that it would admit any included hearsay which was existent within these statements, but emphasized that this evidence was "[q]uite certainly ... subject to attack by way of cross-examination."
However, defendant declined to accept the trial court's invitation to discredit or disprove, by way of cross-examination of plaintiff, the statements which it found to be objectionable. Instead, defendant waited until the presentation of its own case in chief, and then focused solely on establishing that "Mike" was no longer its employee on the date of the incident. Toward this end, defendant relied on the testimony of Ms. Masters that "Mike" was actually a person named Michael Ardilla, that Mr. Ardilla had previously been employed by defendant as a lift operator, but that he was not so employed at the time of the accident. Instead, Ms. Masters maintained that "Mike" was merely a skiing customer at the time of the collision with plaintiff, having been terminated as an employee four days prior to the concerned incident.
At the conclusion of the proofs, defendant moved for a directed verdict, contending that the terms of the New Jersey Ski Statute, N.J.S.A. 5:13-1, et seq., served as a bar to plaintiff's action. Specifically, defendant maintained that "Mike," as another skier, represented nothing more than an inherent risk of the sport of skiing; one which plaintiff should be held to have assumed. The *92 trial court denied defendant's motion, reasoning, in part, that "taking the evidence in the light most favorable to [p]laintiff, [this case] would be the kind ... which would not fall within the contemplation of the [Ski] [S]tatute." The jury assessed damages in the total sum of $10,000, and apportioned the parties' negligence at 80% for defendant and 20% for plaintiff. Defendant's motion for a judgment notwithstanding the verdict was denied, and the trial court thereupon entered judgment on the molded jury verdict in favor of plaintiff. Defendant appeals.

I.
Defendant contends that the trial court erred in failing to grant its motion for a directed verdict at the close of all of the evidence, and its subsequent motion for a judgment notwithstanding the jury's verdict, since it was entitled to such relief based on the Ski Statute, N.J.S.A. 5:13-1, et seq. We disagree. Under the rather accommodating standard of review set forth in Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969), it is perfectly clear that the trial court properly denied defendant's motions for a directed verdict and for a judgment notwithstanding the jury's verdict.
In setting forth the legislative findings and the purpose of the Ski Statute, N.J.S.A. 5:13-1 provides:
a. The Legislature finds that the sport of skiing is practiced by a large number of citizens of this State and also attracts to this State large numbers of nonresidents, significantly contributing to the economy of this State and, therefore, the allocation of the risks and costs of skiing are an important matter of public policy.
b. The purpose of this law is to make explicit a policy of this State which clearly defines the responsibility of ski area operators and skiers, recognizing that the sport of skiing and other ski area activities involve risks which must be borne by those who engage in such activities and which are essentially impractical or impossible for the ski area operator to eliminate. It is, therefore, the purpose of this act to state those risks which the skier voluntarily assumes for which there can be no recovery. [Emphasis added].
By way of further background to the Ski Statute, the Assembly Judiciary, Law, Public Safety and Defense Committee Statement which follows N.J.S.A. 5:13-1 announced, in pertinent part, that:

*93 The purpose of this bill is to establish in statutory law the responsibilities and liabilities of ski area operators and skiers with respect to skiing accidents. These responsibilities and liabilities are currently covered under the general law of negligence, which is primarily case law. A Vermont case, Sunday v. Stratton, [136 Vt. 293, 390 A.2d 398 (1978),] has caused considerable concern nationwide among ski area operators and their insurers over the potential liability of ski area operators for skiing injuries. In the Sunday case, the court held that the doctrine of assumption of risk as a defense which completely barred recovery in negligence cases was no longer applicable because of the adoption of a comparative negligence statute. Prior to the case, this doctrine was one of the major defenses in actions based on skiing accidents. A comparative negligence statute was enacted in New Jersey in 1973 (P.L. 1973, c. 146, C. 2A:15-5.1 et seq.).
The uncertainty over what effect the Sunday case will have on the liability of ski area operators for skiing injuries has led to increases in the cost of liability insurance. It also poses a threat to the availability of this type of insurance which is currently provided by only a few insurers.
The bill, as introduced, proposes to deal with the problem by specifically listing the responsibilities of ski area operators and skiers. It provides that an operator is not liable to a skier for a skiing injury unless he violates his responsibilities. In addition, it bars a skier from suing an operator for a skiing injury if the skier contributes to the injury by violating his responsibilities....
However, the Statement also acknowledged that:
[A] skier is not barred from suing an operator based upon assumed risks or for injuries to which he contributed if the operator violated his duties or responsibilities under the bill. In [such a] case, the provisions of the comparative negligence law would apply.
The precise statutory provision which addresses assumption of risk is N.J.S.A. 5:13-5, which directs that:
A skier is deemed to have knowledge of and to assume the inherent risks of skiing, operating toboggans, sleds or similar vehicles created by weather conditions, conditions of snow, trails, slopes, other skiers, and all other inherent conditions. Each skier is assumed to know the range of his ability, and it shall be the duty of each skier to conduct himself within the limits of such ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting [in] a manner which may cause or contribute to the injury of himself or others. [Emphasis added].
Regarding the applicability of the comparative negligence doctrine to skiing accidents which are deemed to fall under the terms of the statute, N.J.S.A. 5:13-6 instructs:
The assumption of risk set forth in section 5 shall be a complete bar of suit and shall serve as a complete defense to a suit against an operator by a skier for injuries resulting from the assumed risks, notwithstanding the provisions of P.L. 1973, c. 146 (C. 2A:15-5.1 et seq.), relating to comparative negligence, unless an *94 operator has violated his duties or responsibilities under this act, in which case the provisions of P.L. 1973, c. 146 shall apply. Failure to adhere to the duties set out in sections 4 and 5 shall bar suit against an operator to compensate for injuries resulting from skiing activities, where such failure is found to be a contributory factor in the resulting injury, unless the operator has violated his duties or responsibilities under the act, in which case the provisions of P.L. 1973, c. 146 shall apply.
The particular duties and responsibilities spoken of in N.J.S.A. 5:13-6 are enumerated in N.J.S.A. 5:13-3a as follows:
It shall be the responsibility of the operator to the extent practicable, to:
(1) Establish and post a system generally identifying slopes and trails and designating relative degrees of difficulty thereof; and to make generally available to skiers information in the form of trail maps or trail reports.
(2) Make generally available either by oral or written report or otherwise, information concerning the daily conditions of the slopes and trails.
(3) Remove as soon as practicable obvious, man-made hazards.
Finally, N.J.S.A. 5:13-3d provides that:
No operator shall be liable to any skier unless said operator has knowledge of the failure to comply with the duty imposed by this section or unless said operator should have reasonably known of such condition and having such knowledge has had a reasonable time in which to correct any condition or comply with any duty set forth in this section.
Based upon a narrow interpretation of the Ski Statute, defendant contends that it should not have been subjected to liability in this case because it had not been shown to have violated any of the expressly delineated responsibilities set forth in N.J.S.A. 5:13-3a. Furthermore, defendant maintains that if plaintiff had succeeded in demonstrating the violation of any type of duty whatsoever, it was only a common law duty, and this was not enough to support a finding of liability under the Ski Statute. While such a position may be arguable under a literal reading of N.J.S.A. 5:13-3, it is clear from the other sections of the Ski Statute that this is not in accord with the Legislature's intent in this area. To deem the list of ski area operators' duties and responsibilities set forth in N.J.S.A. 5:13-3a as being exhaustive would be patently inconsistent with the express language contained in N.J.S.A. 5:13-5 and N.J.S.A. 5:13-1b. These sections of the Ski Statute directly address the degree of insulation from *95 liability that a ski area operator is entitled to under the Ski Statute.
Regarding assumption of risk, N.J.S.A. 5:13-5 emphasizes that skiers are only deemed to assume those risks which are "inherent" in the sport of skiing. See also Pietruska v. Craigmeur Ski Area, 259 N.J. Super. 532, 537, 614 A.2d 639 (Law Div. 1992); Jeffrey W. Lorell, New Ski Law: Are Downhill Injury Claims Headed Downhill?, 103 N.J.L.J. 197 (1979). Therefore, the Ski Statute exists primarily for the purpose of providing ski area operators with protection against liability based on risks "which are essentially impractical or impossible for [them] to eliminate." N.J.S.A. 5:13-1b. See, e.g., Pietruska v. Craigmeur Ski Area, supra, 259 N.J. Super. at 537, 614 A.2d 639 (improper operation of a ski lift deemed not to be an "inherent" risk of skiing since, with due care, it can be eliminated).
Here, the risk which was involved, a drunken and dangerous skier, is clearly not an "inherent" risk of the sport of skiing which plaintiff should be charged with having assumed by virtue of setting foot on defendant's slopes. Moreover, it cannot be categorized as the sort of risk which is "impractical or impossible" to eliminate, especially in light of the fact that defendant was fully aware of it. Clearly, with due care on defendant's part, this risk could have been eliminated. Consequently, to afford defendant insulation from liability in this case based on a narrow and literal reading of N.J.S.A. 5:13-3 would actually serve to frustrate, rather than advance, the underlying goals of the Ski Statute. This, we are not prepared to do.
It is well settled that "[w]here a literal rendering [of a statute] will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972). See also Jersey City Chapter of Property Owner's Protective Assn. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969); Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959). Additionally, statutes are to be *96 read sensibly rather than literally, with the purpose and reason for the legislation controlling. Suter v. San Angelo Foundry & Machine Company, 81 N.J. 150, 160, 406 A.2d 140 (1979). In seeking to ascertain the purpose and reason for the legislation, a court must consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). See also State v. Wright, 107 N.J. 488, 497, 527 A.2d 379 (1987); Denbo v. Moorestown Township, 23 N.J. 476, 481, 129 A.2d 710 (1957); State v. Brown, 22 N.J. 405, 415, 126 A.2d 161 (1956).
It is beyond question that "[s]tatutes [should] not be interpreted in a manner leading to absurd or unreasonable results." 534 Hawthorne Ave. Corp. v. Barnes, 204 N.J. Super. 144, 148, 497 A.2d 1265 (App.Div. 1985). See also State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966). In fact, when construing a statute, "every effort should be exerted to avoid ... an anomalous result." Union Co. Bd. of Freeholders v. Union Co. Park Com., 41 N.J. 333, 341, 196 A.2d 781 (1964). Accord Robson v. Rodriguez, 26 N.J. 517, 528, 141 A.2d 1 (1958); New Capitol Bar & Grill Corp. v. Division of Employment Sec., 25 N.J. 155, 159-60, 135 A.2d 465 (1957).
If we were to adopt defendant's position in this case, an anomalous result would certainly obtain. Specifically, defendant would be shielded from liability for plaintiff's injury, despite the fact that it was aware of a clear and present danger on its premises, which ultimately resulted in plaintiff's injury, and it simply neglected to remove it. Clearly, no reasonable reading of the Ski Statute can justify such a result as being within the Legislature's intent. Thus, we cannot, and will not, sanction such a result. For these reasons, we are convinced that the trial court properly denied defendant's motion for a directed verdict and a judgment notwithstanding the verdict.
Parenthetically, we note that the manner in which the trial court addressed the dispositive issues in its jury charge was entirely *97 proper. Recognizing that significant factual questions existed regarding whether or not "Mike" was drunk and thereby represented a dangerous condition on defendant's premises, and, if so, whether or not defendant was aware of these factors, the trial court gave alternate instructions on the applicable law and left it up to the jury to decide which principles to apply based on its resolution of the factual issues before it. Thus, if the jury elected to believe plaintiff's testimony regarding "Mike's" drunkenness and dangerous nature, as well as defendant's awareness of these factors, then the provisions of the Ski Statute would be inapplicable, since the risk involved could not be deemed to be one which is "inherent" in the sport of skiing and, in fact, would represent one which could easily have been eliminated. Under such circumstances, general negligence principles concerning the duty owed by owners and occupiers of land to business invitees would be the appropriate standard. See Brown v. Racquet Club of Bricktown, 95 N.J. 280, 290-91, 471 A.2d 25 (1984). However, if the jury chose to disbelieve plaintiff's testimony on these issues, defendant would be insulated from liability under the terms of the Ski Statute because "Mike" would then represent nothing more than another skier, the risk of which plaintiff would be charged with having assumed under N.J.S.A. 5:13-5.

II.
Defendant also contends that the trial court erred in admitting plaintiff's hearsay testimony regarding the alleged drunkenness and dangerous nature of "Mike," and defendant's awareness of the existence of this condition on its Great Gorge premises. Defendant argues that the vicarious admissions exception to the hearsay rule, which was relied on by the trial court to admit the challenged evidence, was inapplicable since plaintiff failed to establish that the declarants were agents of it. Defendant also argues that even if agency were properly established, use of the vicarious admissions exception was still improper because the statements of the declarants themselves constituted *98 hearsay, thus resulting in a case of "hearsay within hearsay" or "included hearsay."
Evid. R. 63(9)(a), in pertinent part, provides:
A statement which would be admissible if made by the declarant at the hearing is admissible against a party if (a) when made it concerned a matter within the scope of a then existing agency, employment or representative relationship....
This rule represents a substantial modification and "expansion of prior New Jersey law." Biunno, Current N.J. Rules of Evidence, comment 1 on Evid. R. 63(9) (1993). Formerly, it was only statements actually rendered in the execution of the agency, employment or representative relationship that were admissible. See Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145, 84 A.2d 281 (1951); Carter v. Public Service Coord. Transport, 47 N.J. Super. 379, 385, 136 A.2d 15 (App.Div. 1957); Blackman v. West Jersey & Seashore R.R. Co., 68 N.J.L. 1, 3, 52 A. 370 (Sup.Ct. 1902). It was said that "[t]he admissions of an agent [were binding on] a principal only when [made] within the scope of the agency or when they [were] authorized by the principal." Hansen v. Eagle-Picher Lead Co., supra, 8 N.J. at 145, 84 A.2d 281. The rule was that "only words which [were] spoken, or acts which [were] done[] by an agent in the execution of his agency ... [were] admissible in evidence against the principal." Ibid. This rule was said to "exclude[] all statements or narrations of an agent which, although relating to the business of the principal, were not made in execution of the agency." Ibid.
Our former practice, which represented the majority rule throughout the nation, was soundly criticized by "outstanding scholars" and various federal courts. Nobero Co. v. Ferro Trucking, Inc., 107 N.J. Super. 394, 403, 258 A.2d 713 (App.Div. 1969). See e.g., Grayson v. Williams, 256 F.2d 61, 67-68 (10th Cir.1958); Martin v. Savage Truck Line, 121 F. Supp. 417, 419 (D.D.C. 1954). Evid. R. 63(9)(a) was designed to effect a departure from prior New Jersey law by "sanctioning the admissibility of admissions made by agents when they are made before termination of the employer-employee relationship and when they relate to matters within the performance duties of the agent." Nobero Co. v. Ferro *99 Trucking, Inc., supra, 107 N.J. Super. at 403, 258 A.2d 713. See Report of the New Jersey Supreme Court Committee on Evidence, comment on R. 63(9)(a) at 165 (1963); Green, Drafting Uniform Federal Rules of Evidence, 52 Cornell L.Q. 177, 193 (1967); Brooks, Evidence, 14 Rutgers L.Rev., 390, 411-13 (1960). Since the adoption of Evid. R. 63(9) in 1967, the proponent need only establish that the agent's statement pertained to a matter within the scope of his employment. The statement need not have been specifically authorized by the principal, or made in execution of the agent's duties. Biunno, supra, comment 1 on Evid. R. 63(9). Thus, it has been specifically noted that:
Rule 63(9)(a) sanctions the admissibility of admissions made by agents, employees, or representatives at any time prior to termination of the agency, employment, or representative relationship when the admissions relate to matters within the performance duties of the agent, representative, or employee. The statements no longer have to be made while the agent is actually technically engaged in his agency duties to be admissible. See 4 Wigmore, Evidence § 1078 (Chadbourn rev. 1972). [Ibid.].
Several reported opinions are illustrative of the broad expanse of the modern evidentiary rule. In Nobero Co. v. Ferro Trucking, Inc., supra, a landlord sued its tenant for damages arising out of a fire. It was alleged that the fire was caused by a gasoline explosion. In support of this theory, the landlord was permitted to elicit testimony from an investigatory firefighter that he had been told by an unidentified employee of the tenant that the fire had been caused by using gasoline to wash excess paint off of a truck; a practice which the firefighter concluded was "careless." 107 N.J. Super. at 400-01, 258 A.2d 713. On appeal, this court upheld the trial court's evidentiary ruling on the basis of Evid. R. 63(9)(a). Id. at 403-04, 258 A.2d 713. Although all of the tenant's employees who had been present when the fire broke out denied making the statement, we said that the issue of "[c]redibility was for the jury." Id. at 404, 258 A.2d 713.
A somewhat similar issue was presented in Solomon v. Continental Ins. Co., 122 N.J. Super. 125, 299 A.2d 413 (App.Div. 1972). There, the trial court barred testimony by an insured party concerning a vicarious admission which had allegedly been made *100 by an unidentified employee of the insurer. We reversed the judgment in favor of the insurer on other grounds. Id. at 135-36, 299 A.2d 413. However, in doing so, we noted "[i]n passing ... our disagreement with the trial judge's determination that the unrefuted testimony concerning the unidentified [employee] constituted inadmissible hearsay." Id. at 135, 299 A.2d 413 (citing Evid. R. 63(9)(a)).
Applying New Jersey law, the Third Circuit reached the same conclusion under similar circumstances in Joseph T. Ryerson & Son., Inc. v. H.A. Crane & Brother, Inc., 417 F.2d 1263 (3d Cir.1969). There, plaintiff sued various parties, claiming that they had caused a fire in its building. At trial, the court admitted into evidence a statement made by an unidentified employee of plaintiff that a spark or flame from an electric box had ascended a wall or beam inside the building. Id. at 1269. On appeal, plaintiff contended that the agent's statement was not made in execution of his employment duties. Id. at 1271. Citing Evid. R. 63(9)(a), the Third Circuit rejected plaintiff's argument. Id. at 1270-71. The court reasoned that "[t]his rule [Evid. R. 63(9)(a)] does not require that before the statement is admissible it must be shown that the servant was authorized to make it but only that the statement be made as `an ordinary incident of his employment status.'" Id. at 1270 (quoting Kingsley v. Miller, 90 N.J. Super. 9, 14, 216 A.2d 11 (App.Div. 1965)).
The principles cited in these decisions apply with equal force here. It is perfectly clear that employees or agents of a defendant need not be specifically identified in order for their statements to be binding upon their employer. All that is required is that it be established that an agency, employment or representative relationship was ongoing at the time the statements were made. Here, this requirement was plainly met by plaintiff and, therefore, the trial court properly admitted his challenged statements under the vicarious admissions exception to the hearsay rule.
The more difficult question in this case is whether or not plaintiff testified truthfully with respect to the statements of the *101 declarants concerning "Mike's" drunkenness and dangerous nature, and defendant's awareness of these factors. In the context of a statement allegedly made by an unidentified employee, there always looms a fertile field for fabrication and fraud. However, in the final analysis, this question focuses upon the credibility of the particular witness, and that, undoubtedly, is an issue which is best left to be resolved by the trier of fact.

III.
All other issues raised by defendant on this appeal are clearly without merit. R. 2:11-3(e)(1)(E).

IV.
Accordingly, the judgment under review is affirmed.