720 A.2d 601

DIANE E. SPENCER, PLAINTIFF–RESPONDENT, v. BRISTOL–MEYERS SQUIBB COMPANY, A DELAWARE CORPORATION AND E.R. SQUIBB & SONS, INC., A NEW YORK CORPORATION, DEFENDANTS–APPELLANTS.

Argued September 14, 1998—Decided December 8, 1998.

456

*Rosemary Alito* argued the cause for appellants (*McCarter & English*, attorneys; *Ms. Alito* and *Anthony Palmisano, Jr.*, on the briefs).

*James B. Sharp* argued the cause for respondent (*Reiseman & Sharp*, attorneys; *Meghan E. Walsh*, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This is an employment discrimination case. At issue is the admission into evidence of a statement by a personnel director to an employee to the effect that the employee was denied promotion

because her immediate supervisors did not wish a woman of her age and race to hold the position that the employee sought.

■ We hold that, because the personnel director's statement identified the supervisors involved, and because the alleged statements by the supervisors fall within the scope of their employment, the personnel director's statement to plaintiff had sufficient reliability to be admitted into evidence as a party admission under *N.J.R.E.* 803(b)(4). Accordingly, we affirm the judgment of the Appellate Division holding the statement admissible.

I

. For purposes of this appeal, we accept generally the statement of the case set forth in the employer's petition for certification.

In October 1989, Diane E. Spencer was employed as a Director of Strategic Planning by E.R. Squibb & Sons, Inc. At about that time, Squibb merged with Bristol–Meyers Company to form Bristol–Meyers Squibb Company (BMS). As a result of the merger, plaintiff and others in her department were scheduled to lose their jobs.

Just before the effective date of her termination, plaintiff interviewed for the position of Director of Marketing Research within BMS's contemplated hospital marketing and marketing service department. BMS anticipated creating this position to provide intermediate-level managerial support to Ronald Gentile, who was then the director of marketing.

Spencer interviewed with Gentile, Christine Poon, and Michael Walker, BMS's Director of Human Resources. After her interview, plaintiff spoke with Walker about her prospects of obtaining the position. At a later deposition, she testified that Walker said:

[W]e are having a difficult time trying to get that position for you. There is a person in the department the company is concerned about, I don't know if you know her, but her name is Maria Neu.... [H]er father is very influential in the company. He is one of the biggest writers of Captan which is the product at the time.

. . . .

Her father is kind of manipulative and had his hand in her career since she started at the company. To be honest, there is some concern in the company and *he didn't say who,* concern that if we bring you into the department, her father would be a little concerned about the idea of having a black female of your age as her role model (emphasis added).

In her statement, "he didn't say who," plaintiff apparently indicated that Walker did not say at the time whose concerns he was expressing. Later in the same deposition, plaintiff said that Walker had mentioned Poon, Gentile, and Oaks, who was the Vice President of Marketing. Plaintiff later added, "He [Walker] told me he met with Chris Poon and he talked with her. There was no problem with me from Chris Poon, but there was concern from the others."

When plaintiff was denied the position, she brought an employment discrimination action against BMS. Under the New Jersey Law Against Discrimination (LAD), specifically *N.J.S.A.* 10:5–12, she alleged age and race discrimination in the termination of her employment under the reduction in force and in BMS's refusal to hire her as assistant director of marketing research within the hospital marketing and marketing services department. At a pretrial hearing, BMS challenged the admissibility of Walker's statements. Plaintiff testified at the hearing regarding the substance and context of Walker's statements to her. Plaintiff was quite specific concerning all the details of the conversation. Plaintiff stated for the first time that Walker had also mentioned Jim Mauzey as one of the concerned managers in the marketing department. She testified that she "asked who specifically [was concerned because of her age and race] and [Walker] told [her]." When asked, "And who did he tell you?," Spencer answered, "He said—he said Rick Gentile, Moe Oaks, and Jim Mauzey." At the conclusion of the hearing, the trial court excluded the statements attributed to Walker. Because the statements were the only proffered evidence of discrimination, the trial court dismissed plaintiff's complaint. Plaintiff appealed from the dismissal of her

complaint. BMS cross-appealed from the denial of its motion for summary judgment.

The Appellate Division reversed the dismissal of plaintiff's case, affirmed the orders denying BMS's motion for summary judgment and remanded for trial. The panel found that plaintiff could avail herself of the vicarious admission exception to the hearsay rule, *N.J.R.E.* 803(b)(4), for both levels of hearsay, because plaintiff had adequately identified the links in the hearsay chain and had demonstrated the relation of the statements to "the recruitment and hiring process for the position in which plaintiff had evinced an interest." The court concluded that "the triple hearsay problem perceived by the trial court d[oes] not exist," because "the truth or falsity" of Dr. Neu's statements or attitudes was not in issue. The court concluded that the trial court's ruling improperly included an assessment of plaintiff's credibility, where the trial court should have assessed merely whether the "statement was made ... under circumstances establishing sufficient reliability." (quoting *State v. Gross,* 216 *N.J.Super.* 98, 110, 523 *A.*2d 215 (App.Div.1987), *aff'd,* 121 *N.J.* 1, 577 *A.*2d 806 (1990)). We granted BMS's petition for certification. 152 *N.J.* 190, 704 *A.*2d 20 (1998).

## II

Entire law review articles and treatise sections have been devoted to the question of the admissibility of employee statements that are binding on the employer. *See* Freda F. Bein, *Parties' Admissions, Agents' Admissions: Hearsay Wolves in Sheep's Clothing,* 12 *Hofstra L.Rev.* 393 (1984); David J. Wallman, *Employees' Admissions in New York: Time for a Change,* 11 *Touro L.Rev.* 231 (1994); Michael H. Graham, *Handbook of Federal Evidence* § 801.24 (4th ed.1996). We need not explore in this case every nuance that governs the admissibility of vicarious admissions by a party's employees. We address only the following issues.

A. The Personal Knowledge Requirement

Defendants contend that *N.J.R.E.* 803(b)(4) should include a personal knowledge requirement. Jack B. Weinstein, Judge of the Eastern District of New York, has criticized the "absence of a formal requirement of personal knowledge [in the federal vicarious admission rule]." Wallman, *supra*, at 246 (citing 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein on Evidence* ¶ 801(d)(2)(D)[01], at 298). Judge Weinstein comments that "[g]ossip does not become reliable merely because it is heard in an office rather than a home." Wallman, *supra* at 246 (quoting Weinstein & Berger, *supra*, ¶ 801(d)(2)(C)[01] at 298). "[E]ven an employee well-disposed towards his employer may report rumors he has heard, not because of their truth, but because his employer may be interested in the fact that there are rumors." *Ibid.* (quoting Weinstein & Berger, *supra*, ¶ 801(d)(2)(D)[01], at 278).

The federal rule does not require personal knowledge. "There is nothing in the plain language of [*Fed.R.Evid.* 801(d)(2) ] that requires that the admission be based on personal knowledge. In fact, the Advisory Committee [on the Federal Rules of Evidence] stated that this omission was intentional." Wallman, *supra*, at 246. Those who would omit the personal knowledge requirement rely on the thesis that the adversarial nature of the proceeding will motivate corporate employees to "exercise[ ] caution in ascertaining the accuracy of important and usually damaging information." Dale A. Nance, *Conditional Probative Value and the Reconstruction of the Federal Rules of Evidence*, 94 *Mich. L.Rev.* 419, 445 (1995).

Although *N.J.R.E.* 803(b) follows the "substantive content of [*Fed.R.Evid.* 801(d)(2) ]," it is said to make no substantive change in current New Jersey practice. *N.J.R.E.* 803(b) (comment). The drafters of *N.J.R.E.* 803(b) did not take a position on the personal knowledge requirement or "on what are essentially policy issues." *Ibid.* We need not debate in this case the extent to which the drafters of *N.J.R.E.* 803 may have intended to follow or depart from federal policy concerning a requirement of personal knowl-

edge by employees as a condition of admitting their statements under Rule 803(b). We are satisfied that any requirement of personal knowledge was met here.

New Jersey Rule of Evidence 602 requires a witness to have "personal knowledge of the matter" to which the witness will testify. The Comment explains that the rule requires the offering party "to demonstrate that the witness possesses the personal knowledge to give the testimony in question." But personal knowledge of what? Obviously, a witness recounting a vicarious admission by an employee need not have personal knowledge of that information which the employee has related. For example, a fire chief may testify to an employee's statement that a fire was caused by the use of gasoline to wash paint from a truck, even if the fire chief did not watch the fire start. *Nobero Co. v. Ferro Trucking Inc.*, 107 *N.J.Super.* 394, 401–04, 258 *A.*2d 713 (App.Div. 1969). Similarly, a plaintiff may testify to the statement of a ski patrol employee that the skier who injured the plaintiff was also a ski area employee who previously had been asked to leave the slopes for skiing drunk. *Reisman v. Great American Recreation, Inc.*, 266 *N.J.Super.* 87, 100–01, 628 *A.*2d 801 (App.Div.1993). Like the injured skier, Spencer is testifying to information which is within her personal knowledge, because she knows what Walker said to her.

Whether what Walker said to Spencer is admissible depends on whether Walker could have given the testimony at a trial. Biunno states, "A statement is only admissible under *N.J.R.E.* 803(b)(4) if it would have been admissible if made by the declarant at the hearing." Richard J. Biunno, *Current N.J. Rules of Evidence* comment 4 on *N.J.R.E.* 803(b)(4) (1998). Although Walker's statement was somewhat amorphous compared to the statements in *Nobero* and *Reisman,* the statement may be read in two ways. Either interpretation suggests that Walker had "personal knowledge to give the testimony in question." Biunno, *supra,* comment on *N.J.R.E.* 602. If Walker's statement is interpreted as a statement of company policy explaining why Spencer

would not be hired, it should be admissible. Given Walker's job responsibilities, it is fair to infer that Walker, as a participant in the hiring decision, was in a position to know about Spencer's prospects for employment, whether or not Walker's knowledge was based on specific conversations with other employees. "Under New Jersey's very broad concepts of admissibility of evidence, a statement by a party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship is admissible in evidence against the party." *In re Opinion 668 of the Advisory Committee on Professional Ethics,* 134 *N.J.* 294, 300, 633 *A.2d* 959 (1993) (citing *N.J.R.E.* 803(b)(4)). In the alternative, if Walker's statement is interpreted as reciting what he had been told by Gentile, Mauzey and Oaks concerning why Spencer would not be hired, surely Spencer has provided a sufficient "foundation to demonstrate" that these employee witnesses directly involved in the hiring process had sufficient personal knowledge to give the testimony if they were witnesses at the trial. Because each interpretation of Walker's statement suggests a sufficient foundation of personal knowledge, his statement is admissible.

## B. The Double Hearsay Issue

Although the Federal Rules of Evidence characterize vicarious admissions as simply not hearsay, "[i]t seems plain that any out-of-court party statement offered in evidence for its truth should, consistent with this definition, be classified as hearsay." Bein, *supra,* 12 *Hofstra L.Rev.* at 404. Accordingly, *N.J.R.E.* 803(b) classifies vicarious admissions as an exception to the hearsay rule, although the New Jersey rule borrows the language of the analogous federal rule in all other respects. Because the New Jersey rule classifies vicarious admissions within an exception to the hearsay rule, "[a] statement is only admissible under *N.J.R.E.* 803(b)(4) if it would have been admissible if made by the declarant at the hearing. Thus if the declarant's statement was itself only hearsay, and not admissible under any of the exceptions to the hearsay exclusionary rule it could not be admissible under

*N.J.R.E.* 803(b)(4)." Biunno, *supra,* comment 4 on *N.J.R.E.* 803(b)(4). Each component of plaintiff's statement must be admissible under an enumerated exception to the hearsay rule, or the statement is inadmissible. In this case, each component of the proffered testimony meets such an exception.

All that is required for admission under *N.J.R.E.* 803(b)(4) is that the statement offered against a party be "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *N.J.R.E.* 803(b)(4). It could not be more clear that the statement made by Walker, the Personnel Director, concerned a matter within the scope of Walker's employment and that the statement was made during the existence of his employment relationship with BMS. In addition, the statements inferentially attributed by Walker to the other employees of BMS (Gentile, Mauzey and Oaks) would be admissible because those employees made the statements to Walker during the course of their employment and the statements concerned an issue within the scope of their duties as employees.

To the extent that any of the statements refer to statements by Dr. Neu, it is unnecessary for plaintiff to show that Dr. Neu's statements were truthful. The plaintiff need only show that BMS employees were reacting to their perceived understanding of Dr. Neu's statements or attitudes. That they discriminated against plaintiff because of a misunderstanding of the impact of Dr. Neu's words is of no consequence. Because the truth of Dr. Neu's alleged statements is not at issue, the court on remand could consider excising the statements attributed to Dr. Neu or directing the jury to consider any such references only as background information.

BMS relies primarily on *Carden v. Westinghouse Electric Corp.,* 850 *F.*2d 996 (3d Cir.1988). In that age discrimination case, plaintiff testified that his supervisor, Clark, stated that "he thought they wanted a younger person for the job." *Id.* at 998. The Third Circuit ruled that plaintiff's testimony was double

hearsay because someone other than Clark constituted the "they." *Id.* at 1002. It thus was impossible to determine whether the statements were made within the scope of their employment under the vicarious admission exception. *Id.* at 1003. There is no doubt in this case who the "they" were.

This case fits most closely within the framework of *Abrams v. Lightolier, Inc.,* 50 *F.*3d 1204 (3d Cir.1995). In that case, the employer argued that the statement by a supervisor to an employer that "the company frowned on older people" was admissible. *Id.* at 1215–16. The court ruled:

> Where a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer. We so held in *Zipf v. American Telephone & Telegraph Co.,* 799 *F.*2d 889, 894–95 (3d Cir.1986), citing Rules 801(d)(2)(D) and 701.... We perceive no double hearsay problem because we do not think the supervisor's explanation, if offered through the testimony of the supervisor, would be subject to a hearsay objection. [*Id.* at 1216.]

## C. The Probative Value of the Evidence

Of course, all evidence, including relevant evidence, may be excluded "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." *N.J.R.E.* 403.

In this case the relevant concern involves undue prejudice that could result from the admission of highly unreliable evidence. To some extent, Rule 803(b) and *Federal Rule of Evidence* 801(d)(2) rest on the shared rationale that the adversarial nature of the proceeding is an adequate guarantee of reliability, such that trustworthiness need not be separately tested. *Fed.R.Evid.* 801(d)(2) committee's note; *see also* Paul R. Rice, *The Evidence Project: Proposed Revisions to the Federal Rules of Evidence with Supporting Commentary,* 171 *F.R.D.* 330, 363 (1997) (noting that vicarious admission exception based on "adversarial nature of

the litigation process ... as opposed to the inherent reliability of the statement").

Sometimes this guarantee may be insufficient. Statements of corporate employees are not necessarily statements against their own interests, even when such statements are clearly against the interests of the corporation. An adversarial posture also cannot address problems of perception, memory, and accurate communication. As one commentator has noted:

> Even ... where Employer A instructs Employee B to convey immediately, verbatim, A's own utterance to C, C's in[-]court recitation of the message actually conveyed by B rests for its value on both A's and B's credibility. Under an assertion-oriented definition of hearsay, C's in-court recitation is double hearsay since B's message is offered as a true reproduction of A's utterance. Trier would have to determine first that Employee B correctly heard, remembered, and recited Employer A's words to C. Only then could Trier use the utterance as probative of A's actual belief. In declarant-oriented terms, A is deprived of the opportunity to cross-examine B about his hearing, memory, and narration of A's utterance.
>
> [Bein, *supra*, at 442.]

Although reliability is a legitimate concern, "by far the greater vice is the exclusion of relevant evidence where the circumstances of the case indicate its trustworthiness." *Ruszcyk v. Secretary of Pub. Safety*, 401 *Mass.* 418, 517 *N.E.*2d 152, 155 (Mass.1988). Although BMS contends that employers may have difficulty in producing employee witnesses to counter such hearsay admissions, "logic and experience teach that where, as in this case, a corporation or institution is a party to litigation arising from the activities of its agent or employee, relevant information as to the incident underlying the dispute may well be more readily available than to its opponent." *Ibid.* In this case, nothing indicates that Walker, Gentile, Oakes and Mauzey will be unavailable to testify for BMS. In fact, Walker has already testified favorably to BMS in a deposition.

We are satisfied from our review of the record that despite the trial court's insistence that it was not excluding the evidence on the basis of credibility, that was the net effect of its ruling. The trial court appeared displeased that Spencer first mentioned Jim Mauzey at the Rule 104 hearing. At one point, the trial court

stated, " ... I can't accept testimony that keeps shifting on me." The trial court later added, "in order to make this hearsay credible, there would have to be some underlying independent evidence other than the statement by the plaintiff." The lack of corroboration may affect the weight to be given to plaintiff's testimony, but not its admissibility. The jury will have to assess whether, in fact, Walker truthfully informed the plaintiff of the supervisors' reasons for denying her employment.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, STEIN and COLEMAN—6.

*Opposed*—None.